

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

---

*Rod J. Rosenstein*
*United States Attorney*

*Judson T. Mihok*
*Assistant United States Attorney*

*36 South Charles Street*
*Fourth Floor*
*Baltimore, Maryland 21201*

*DIRECT: 410-209-4903*
*MAIN: 410-209-4800*
*FAX: 410-962-3091*
*TTY/TDD: 410-962-4462*
*Judson.Mihok@usdoj.gov*

May 14, 2013

Patrick Kent, Assistant Federal Public Defender
Tower II, Suite 900
100 South Charles Street
Baltimore, Maryland 21201

    Re:   <u>United States v. Larry James Kerfoot</u>, Criminal No. ELH 12-0571

Dear Mr. Kent:

      This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by May 24, 2013, it will be deemed withdrawn. The terms of the agreement are as follows:

Offense of Conviction

      1.    The Defendant agrees to plead guilty pursuant to Fed. R. Crim. P. 11(c)(1)(C) to Count One of the Criminal Indictment charging him with Sexually Exploiting a Minor for the Purpose of Producing Visual Depictions of a Minor Engaged in Sexually Explicit Conduct, in violation of 18 U.S.C. § 2251(a). The Defendant admits that he is, in fact, guilty of this offense and will so advise the Court.

Elements of the Offense

      2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

      That on or about the dates specified in Count One of the Indictment, in the District

1

of Maryland, the Defendant:

    a.  Knowingly employed, used, persuaded, induced, enticed or coerced a minor to engage in sexually explicit conduct;

    b.  For the purpose of producing a visual depiction of such conduct;

    c.  And the Defendant had reason to know that the materials used to produce the visual depictions were transported in interstate and foreign commerce.

  3.  <u>Penalties</u>

    a.  The sentence provided by statute for each of the offenses to which your client is pleading guilty is as follows: not less than fifteen (15) years and not more than thirty (30) years imprisonment, a $250,000 fine, and supervised release for 5 years to life.  In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing.  This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1]  If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release.  The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

    b.  The defendant understands and agrees that as a consequence of his conviction for the crimes to which he is pleading guilty, he will be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant to 18 U.S.C. § 2250.

<u>Waiver of Rights</u>

  4.  The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

    a.  If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could

---

   [1]  Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

2

be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

        b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community.  Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily.  All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count.  The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

        c.      If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt.  The Defendant would have the right to confront and cross-examine the government's witnesses.  The Defendant would not have to present any defense witnesses or evidence whatsoever.  If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

        d.      The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify.  If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

        e.      If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him.  By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

        f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence.  By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case.  Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

        g.      If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

        h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.  The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status.  Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States.  Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court,

can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5.    The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6.    This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

a.    **PRODUCTION**

(i)    The base offense level is thirty-two (32). U.S.S.G. §2G2.1(a).

(ii)    There is a ~~four (4)~~ level increase because the victim in this case was ~~under~~ the age of 12 at the time of the offense. U.S.S.G. §2G2.1(b)(1)

(iii)    There is a two (2) level increase because there was commission of a sexual act or sexual conduct. U.S.S.G. §2G2.1(b)(2)(A).

(iv)    There is a two (2) level increase because the minor was in the custody, care or supervisory control of the defendant. U.S.S.G. §2G2.1(5)

(v)    **The offense level, therefore, is forty ~~(40)~~.**

b.    **RELEVANT CONDUCT PER U.S.S.G. §1B1.3**

(i)    Pursuant to U.S.S.G. §2A3.1, the Defendant engaged in the repeated Criminal Sexual Abuse of the Minor Victim. Said abuse occurred at least 5 separate times during the range of dates specified in the Indictment for Count One. The base offense for this conduct starts at level thirty (30) pursuant to U.S.S.G. §2A3.1.

(ii)    There is a four (4) level increase because the victim had not attained the age of 12 years. U.S.S.G. §2A3.1(b)(2)

4

(iii)    There is a two (2) level increase because the victim was in the care, custody or supervisory control of the Defendant. U.S.S.G. §2A3.1(b)(3).

(iv)    The defendant also admits to distributing child pornography but the parties do not believe the distribution guidelines will affect the adjusted offense level under the multiple count grouping rules

(v)    Thus, the adjusted offense level for the relevant conduct is **36.**

c.    <u>COMBINED OFFENSE LEVEL</u>

Pursuant to U.S.S.G. §§1B1.2 and 3D1.4, the above-referenced conduct does not group. The guidelines count as one unit the group with the highest offense level and count as one additional unit each group that is equally serious or from 1 to 4 levels less serious. Since the offense level for the Production offense is forty (40) and the Criminal Sexual Abuse/Relevant Conduct is thirty-six (36), four (4) levels less serious, each instance counts as one Unit and the highest offense level (40) is increased by five (5) offense levels. U.S.S.G. §3D1.4(a).

**The offense level, therefore, is forty-five (45).**

7.    This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

**The final base offense level, therefore, is forty-two (42).**

8.    The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

9.    This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, there should be a no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

## Obligations of the United States Attorney's Office

10.     The parties stipulate and agree that, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), **a sentence between 300 months (25 years) and 360 months (30 years) imprisonment in the custody of the Bureau of Prisons and lifetime supervised release is the appropriate disposition of this case.** This agreement does not affect the Court's discretion to impose any lawful fine or to set any lawful conditions of supervised release. In the event that the Court rejects this plea agreement, *either* party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea agreement pursuant to the provisions of Federal Rule of Criminal Procedure 11(d)(2)(A).

11.     At the time of sentencing, the United States Attorney's Office will recommend a sentence of 30 years, a lifetime period of supervised release, and will move to dismiss the remaining charge of the Indictment pending against the Defendant.

12.     The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the count of the Indictment that this Office has agreed to dismiss at sentencing.

## State v. Larry James Kerfoot (Baltimore County)

13.     Pursuant to this agreement, if the Defendant is sentenced according to its terms, the Baltimore County State's Attorney's Office agrees that the related charges against the Defendant in case number 03K12004197 will resolve by remaining on the stet docket.

## Waiver of Appeal

14.     In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a.      The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b.      The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c.      Nothing in this agreement shall be construed to prevent the Defendant

6

or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d.      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

15.      The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. §3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw his guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

16.      The Defendant expressly understands that the Court is not a party to this agreement. The Defendant understands that the Court is under no obligation to accept this plea offer made pursuant to Rule 11(c)(1)(C).   The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Forfeiture

17.      The defendant agrees to forfeit all right, title and interest in the property seized by law enforcement authorities from his residence on June 27, 2012. He further agrees to take whatever steps are necessary to pass clear title to those properties to the United States.

### Restitution

18.      For purposes of sentencing, the offense of conviction constitutes a crime of

violence pursuant to 18 U.S.C. § 16. Therefore, under 18 U.S.C. §§ 3663A, 2259, and 3771, any identified victim is entitled to mandatory restitution. The restitution could include the medical bills, compensation for time missed from work, as well as counseling costs (including travel) for any of the victims related to the incident, if any such costs exist or are reasonably projected. 18 U.S.C. §§2259, 3663A(b)(2) and (4). The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement. Defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw Defendant's guilty plea. If the Defendant is incarcerated, the Defendant agrees to participate in the Bureau of Prisons Inmate Financial Responsibility Program.

Testing

19. The Defendant agrees to the entry of an order requiring him to undergo blood testing to determine if he has any sexually transmitted diseases or is HIV positive. The testing is ordered pursuant to Title 42, USC § 14011. The release of the results of the test shall comply with that same section and expressly understands and agrees that the results will be shared with the guardian for Jane Doe.

Entire Agreement

20. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____

Judson T. Mihok
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.


7-31-13
Date

*Larry Kerfoot*
Larry James Kerfoot


I am Larry James Kerfoot's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.


7-31-13
Date

Patrick Kent, Esquire

9

## ATTACHMENT A-STATEMENT OF FACTS

*The undersigned parties hereby stipulate and agree that if this case had proceeded to trial the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

LARRY JAMES KERFOOT, age 39, formerly was a resident of Dundalk, Maryland.

On May 30, 2012, a Baltimore County Police Department Detective, acting in an undercover capacity, utilized a file sharing system known commonly as "Peer to Peer" and downloaded a video file entitled "dad and daughter 8yr(3).avi," which depicts a naked prepubescent minor female engaged in oral sex with an adult male. This file was being made available for downloading by a computer connected to the internet with Internet Protocol Address ("IPA") 108.40.73.195. This IPA resolved to customer LARRY KERFOOT at a residence in Dundalk, Maryland.

On June 27, 2012, law enforcement officers executed a search warrant at that residence and recovered a number of computers and digital media, to include one Seagate Barracuda 500GB hard drive, model: 7200.10, s/n: 5QG1EWYE; one Western Digital 500 GB hard drive, s/n: WCASU6566363; one Panasonic mini DV; and one JVC Digital Video Camera, model: GR-DA30U. Forensic examination of these items revealed a collection of approximately 19 videos and 80 images of child pornography that had been received from the internet. In addition, while the search warrant was being executed, Detectives reviewed a brief portion of a Panasonic Mini DV which had been found under the mattress in the bedroom where the computer was located and observed an adult female exposing her breasts and vagina. The adult female on the Panasonic Mini DV was a relative of KERFOOT'S whom he had paid on two occasions, once in Percocet pills and once in cash, to take her clothes off and pose for him.

When asked if he wanted to discuss the contents of the tape, KERFOOT stated that it depicted a video that he had produced with a minor female. Further review of the Panasonic Mini DV shows a prepubescent minor female, hereinafter Jane Doe, pulling up her shirt and KERFOOT is heard instructing her to take her clothes off and pose saying, "show me your beautiful pussy" and to "open up" her vagina, as KERFOOT films a close up of Jane Doe's vagina. KERFOOT is also heard telling Jane Doe to tell him to "come" as he masturbates, and Jane Doe responds, "No." KERFOOT then instructs Jane Doe to film him masturbating and Jane Doe tapes him masturbating. KERFOOT then states, "Let me see your pussy," to which Jane Doe replies, "No." KERFOOT then asks Jane Doe, "Can I taste it?"

After knowingly, intelligently, and voluntarily waiving his rights pursuant to *Miranda*, KERFOOT acknowledged the contents of the tape that he had made with Jane Doe and his adult female relative (in exchange for Percocet pills and cash). KERFOOT also acknowledged that he had been viewing child pornography for about 10 years and that he was sexually aroused by child pornography.

KERFOOT knowingly used and coerced Jane Doe to engage in sexually explicit conduct for the purpose of producing the visual depiction of such conduct. The mini DV KERFOOT used to record himself engaged in sexually explicit conduct with Jane Doe was a Panasonic Mini DV that was manufactured in Japan. KERFOOT knew and had reason to know that the mini DV had been transported in interstate commerce. Further, KERFOOT engaged in sexual conduct, to include sexual intercourse and oral sex, with Jane Doe on at least five occasions.

Further investigation revealed that KERFOOT regularly engaged in sexual conduct with Jane Doe, to include having Jane Doe masturbate him, acts of oral sex, digitally penetrating her vagina, and placing his penis on her vagina. KERFOOT sexually abused Jane Doe from the time she was approximately 4 years old and continuing until she was approximately 6 years old; then again from the time when Jane Doe was approximately 10 years old and continued until she was 12 years old. The last sexual contact occurred approximately in May of 2012, about a month prior to the search warrant being executed at the Defendant's residence on June 27, 2012.

I have read this statement of facts, and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

7-31-13
Date

_Larry Kerfoot_
Larry James Kerfoot

2-31-17
Date

_Patrick Kent, Esq._
Patrick Kent, Esq.

11